IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MONICA ELLIOTT, | ) | CASE NO. 1:16 CV 2843 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Monica Lynn Elliott under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 19. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 8.

[4] ECF # 9.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**Facts**

**A.  Background facts and decision of the Administrative Law Judge ("ALJ")**

Elliott who was 46 years old at the time of the administrative hearing,[11] is a high school graduate.[12] She is divorced with two children, one is a minor.[13] Her past relevant employment history includes work as a home health attendant, protective officer, child monitor and waitress.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Elliott had the following severe impairments: right carpal tunnel release surgery;

---

[6] ECF # 10.

[7] ECF # 17 (Commissioner's brief); ECF # 13 (Elliott's brief).

[8] ECF # 17-1 (Commissioner's charts); ECF # 13-2 (Elliott's charts).

[9] ECF # 13-3 (Elliott's fact sheet).

[10] ECF # 21.

[11] ECF # 13-3 at 1.

[12] *Id*.

[13] ECF # 9, Transcript ("Tr.") at 161.

[14] *Id*. at 148.

degenerative disc disease of the cervical spine; diabetes mellitus with peripheral neuropathy; major depressive disorder; and personality disorder (20 CFR 404.1520(c) and 416.920(c)).[15]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Elliott's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally push and pull with the left upper extremity. She can occasionally push and pull foot controls and right hand controls. She can frequently handle and finger with the right upper extremity. She can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. She cannot climb on ladders, ropes, and scaffolds, crawl, or have exposure to hazards, like unprotected heights, moving mechanical parts, and driving motor vehicles. She can do simple tasks and make simple decisions. She can work at an average production rate pace with no strict or fast paced quotas. She can occasionally interact with supervisors, She can have infrequent and superficial contact with co-workers and the public. The work cannot involve conflict resolution, arbitration, and negotiation. She can have infrequent changes in work tasks.[16]

Given that residual functional capacity, the ALJ found Elliott incapable of performing her past relevant work as a home health attendant, protective officer, child monitor, and waitress.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ

---

[15] *Id.* at 136-37.

[16] *Id.* at 141.

[17] *Id.* at 148.

determined that a significant number of jobs existed locally and nationally that Elliott could perform.[18] The ALJ, therefore, found Elliott not under a disability.

**B.     Issues on judicial review**

Elliott asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Elliott presents the following issues for judicial review:

- Whether the ALJ failed to perform a proper treating physician analysis, including a failure to determine the weight afforded to the treating physician.

- Whether substantial evidence demonstrates greater hand limitations than what was determined by the ALJ.

- Whether the ALJ erred in determining that the plaintiff's colitis was not a severe impairment.

- Whether new and material evidence warranting remand.[19]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be remanded.

---

[18] *Id.*

[19] ECF # 13-1 at 1.

# Analysis

**A.   Standards of review**

*1.   Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

2.  *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

---

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[23] 20 C.F.R. § 404.1527(d)(2).

[24] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.³² The court noted that the regulation expressly contains a "good reasons" requirement.³³ The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.³⁴

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.³⁵ It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.³⁶ The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.³⁷ It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

³² *Id.* at 544.

³³ *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

³⁴ *Id.* at 546.

³⁵ *Id.*

³⁶ *Id.*

³⁷ *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give

---

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[40] *Id.* at 375-76.

[41] *Rogers,* 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

[45] *Id.*

the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[46] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

---

[46] *Id.*

[47] *Rogers*, 486 F.3d at 242.

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

-10-

To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[53] *Id.*

[54] *Rogers*, 486 F.3d 234 at 242.

[55] *Blakley*, 581 F.3d at 406-07.

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

-11-

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

---

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

[62] *Id.*

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[64] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[65]

The Sixth Circuit in *Blakley*[66] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[67] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[68]

In *Cole v. Astrue*,[69] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently

---

[63] *Id.* at 409.

[64] *Hensley*, 573 F.3d at 266-67.

[65] *Friend*, 375 F. App'x at 551-52.

[66] *Blakley*, 581 F.3d 399.

[67] *Id.* at 409-10.

[68] *Id.* at 410.

[69] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[70]

**B.     Application of standards**

As noted above, the case presents issues arising from:

- the way the ALJ analyzed the opinion of Dr. Ewa Gross,[71] Elliot's primary care physician;

- the RFC's assessment of limitations in Elliot's hands;

- the absence of Crohn's disease and colitis from the list of severe impairments; and

- purportedly new and material evidence warranting remand.

Because adjudication of the first issue concerning the treatment of the treating source opinion will result in a remand, all other issues will not be addressed here, and such decision will not be considered prejudicial to any future evaluation.

*1.     Dr. Gross's opinion*

The ALJ first considered an October 2013 opinion from Dr. Gross.[72] After acknowledging Dr. Gross as Elliott's treating physician, the ALJ summarized that opinion

---

[70] *Id.* at 940.

[71] The physician's name is more frequently rendered in the case file as simply Dr. Gross, although material addressed to her by other medical sources give it as Dr. Gross-Sawicka. See, *e.g.*, tr. at 519. Inasmuch as Elliott's brief here uses the name Gross I will conform to that usage.

[72] Tr. at 147.

as finding that Elliott: could not stand or walk for more than 15 minutes; that she would have difficulty bending, "stopping [*sic*],"lifting, and grasping; that she could not sit for more than 15-20 minutes without back pain; and that her depression and anxiety caused difficulties with concentrating, following instructions and communicating with others.[73]

The ALJ then addressed an April 2015 opinion from Dr. Gross, which found:

- Elliott could stand and walk for two hours - 15 minutes at a time - in an eight hour workday;

- she could sit for two to three hours - 30 minutes per occasion - in the workday;

- she could not do any "postural activities;"

- she could rarely reach or do gross manipulation;

- she is could not work around heights, moving machinery, temperature extremes, pulmonary irritants, and noise;

- she did not require ambulatory aids;

- she had moderate to severe pain;

- she needed to elevate her legs at will at 90 and 120 degree angles; and

- she was limited by fatigue, uncontrolled blood pressure, depression and anxiety.[74]

The ALJ thereupon contrasted the specific finding of fatigue with a report from a physical examination a year earlier (2014) that noted that Elliott stated she was not feeling

---

[73] *Id.*

[74] *Id.*

poorly and was not tired.[75] The ALJ then generally observed that in early 2015 Dr. Gross had advised Elliott to taker her medications, follow a healthy diet and stay active.[76] From these observations, the ALJ concluded that Elliott's "treatment was much more conservative than assessed by Dr. Gross in his [*sic*][77] opinion and is not supported by his [*sic*] treatment notes." No specific weight was assigned to these opinions.

As Elliott points out in some detail,[78] the functional limitations here were supported by specific medical findings, although the ALJ discussed only the two general observations mentioned above, and made just an overall conclusory statement about the treatment notes not supporting the limitations found. In particular:

- a range of motion test by Dr. Sonia Kirpekar, M.D. in June 2013 showed that "the range of motion in most joints is decreased by 50% due to pain;"[79]

- a physical function study done for Dr. Gross by the Cleveland Clinic rehabilitation department in April 2013 also showed significant decreases in range of motion on both the left and right side, and with regard to cervical motion, as well as upper extremity, lower extremity and trunk;[80]

---

[75] *Id*.

[76] *Id.*

[77] I note that Dr. Gross is female as evidenced by the fact that her name "Sawicka" is in Polish the feminine form of "Sawicki" and as shown in her professional website. See, http:www.ushospitals.org/find-a-doctor/gross-sawicka-ewa.

[78] ECF # 13 at 18-20.

[79] Tr. at 518.

[80] *Id*. at 519-520.

- that same Cleveland Clinic examination done expressly for Dr. Gross in 2013 also showed that while Elliott had relatively normal scores for overall strength, her gripping and pinching strength was well below age and gender norms;[81]

- in addition, this same Cleveland Clinic evaluation documented the results of various gait, balance and transitions tests which showed Elliott significantly limited in making various postural transitions, and further showed measured difficulties with several lifting exercises that were "limited by the client's fatigue" as observed by the clinician during the test;[82]

- the Cleveland clinic functional testing concluded by stating that the measurements from the tests administered showed that Elliott was capable of physically functioning at a sedentary to light work level, as those categories are defined by the DOT.[83]

Moreover, and as Elliott discusses in her brief, the clinical and diagnostic evidence in the record, and that was produced prior to seeing Dr. Gross, includes an MRI showing central disc protrusion at L5-S1,[84] and an MRI of the cervical spine showing degenerative changes at C3-4 level.[85] An EMG test of the right arm showed evidence of moderate carpal tunnel syndrome with active denervation.[86]

In addition, Dr. Gross's records, such as from Elliott's visit in April 2014, show that, among other conditions, Elliott was being continuously treated for fibromyalgia, diabetes and

---

[81] *Id*. at 520.

[82] *Id*. at 521.

[83] *Id*.

[84] *Id*. at 507.

[85] *Id*. at 611.

[86] *Id*. at 595, 614.

osteoarthritis.[87] Further, the medications list from that visit indicates that Elliott was being treated with 15 medications - each recording when the prescription was re-evaluated[88] - and also indicating that two additional or supplemental medications were added.[89]

Significantly, it is at the conclusion of the six pages of notes from this April examination that Dr. Gross adds a brief comment that Elliott should "follow a healthy diet [and] stay active."[90] But, as the prior evidence makes very clear, this remark was in addition to - not apart from - the full delineation of almost 20 medications that Dr. Gross was employing to treat multiple conditions. That "healthy diet and stay active" observation was not - as the ALJ implied - a reference to a minimal and conservative course of treatment consisting of little else but common sense, but rather a concluding point made after detailing an extensive and ongoing course of treatment.

The long-standing rubric for reviewing the functional opinion of a treating source in this Circuit is the two-step analysis set forth in *Gayheart*. To that end, Elliott has correctly noted the many ways this ALJ has not followed that approach.[91] That said, as I have also noted on numerous occasions, case law in this Circuit and in the Northern District of Ohio has increasingly understood *Gayheart* - and the regulations that underpin *Gayheart* - to be

---

[87] See, *id*. at 577.

[88] *Id*. at 578-79.

[89] *Id*. at 580-81

[90] *Id*. at 581.

[91] See, ECF # 13 at 18-19.

satisfied when the ALJ essentially articulates good reasons for giving the opinion of a treating source less than controlling weight.

Here, as was detailed above, the overwhelming medical, diagnostic and clinical evidence provide abundant support for the functional limitation opinion of Dr. Gross. Stated differently, the ALJ's brief, non-specific and general dismissal of Dr. Gross's opinion does not represent a good reason within the meaning of that term to dismiss the functional opinion of this treating source, and so cannot here support the ALJ's decision in this regard.

## Conclusion

Consequently, I find that substantial evidence does not support the decision of the Commissioner and so order that the matter be remanded for further proceedings consistent with this opinion. As was also noted earlier, my decision here to not address all the issues raised by Elliott should not be understood as precluding Elliott from raising these matters in the future nor limit the manner of any future resolution.

IT IS SO ORDERED.


Dated: February 20, 2018                     s/ William H. Baughman, Jr.
                                             United States Magistrate Judge